UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD TRAYNOR,<br><br>   Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>   Defendant. | Case No.: 1:13-cv-1041- BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Donald Traynor ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3).[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Judge Barbara A. McAuliffe, United States Magistrate Judge.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

**FACTS AND PRIOR PROCEEDINGS**

On August 25, 2009, Plaintiff filed his current applications for SSI and DIB alleging disability beginning January 26, 2007. AR 8.[2] Plaintiff's applications were denied initially and on reconsideration. AR 8. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ John Heyer held a hearing on December 13, 2011, and issued an order denying benefits on January 11, 2012. AR 8-18. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on December 13, 2011, in San Francisco, California. AR 29. Plaintiff appeared and testified. AR 29. He was represented by attorney Rosemary Abarca. AR 29. Impartial Vocational Expert ("VE") Kenneth Ferra also testified. AR 29.

Plaintiff was born on July 16, 1959 and was fifty-two years old at the time of the hearing. AR 31. At the hearing, Plaintiff testified that he has not worked since January 2007. His last job was a painter, a job he had done for thirty years. He said that he stopped working because business was slow and his boss suggested that it was a good time to haves some needed surgery on his hands. He stated that the surgery did not turn out well and afterwards he did not try to return to work. AR 31. Plaintiff testified that he is unable to work primarily because of pain in his wrists and hands. AR 32.

When asked about his impairments, Plaintiff testified that his doctors limited him to lifting no more than 20 pounds. AR 32. Plaintiff can stand for thirty (30) minutes in one spot, and walk for ten minutes. AR 32-33. Plaintiff testified that sitting puts pressure on his lower back, but that he could sit through a 2-hour movie, though not comfortably. AR 33. Plaintiff takes pain medication, which significantly helps to relieve his back pain but does little for his hand pain. AR 33. Plaintiff also has a tumor on his pituitary gland that is controlled by medication. AR 36. For Plaintiff's back problems, he previously received epidural injections, but his last injection was over four years ago. During his testimony, Plaintiff also listed a host of other impairments including a partially torn rotator cuff in his

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

shoulder, anxiety problems, water on his knee, no testosterone, and rheumatoid arthritis. AR 36, 38. Plaintiff further explained that he sees a pain management doctor for arthritis and wears a wrist brace. AR 38, 40.

In a typical day, Plaintiff states that he wakes up and spends the majority of his time lying in bed and watching television. AR 34. For some time, Plaintiff avoided attending outings and family gatherings, but he testified that he has recently started attending family affairs again. AR 40. Plaintiff testified that he does no cleaning, cooking, dishes, grocery shopping or laundry. Instead, Plaintiff's 21-year old daughter helps take care of him and Plaintiff's wife does all of the chores and house work. Plaintiff describes his life as pathetic and he complains that because of his wrist pain he is unable to write, play golf, or target shoot with his new gun collection. AR 35, 40.

Thereafter, the ALJ elicited testimony of the vocational expert ("VE") Kenneth Ferra. AR 42-45. The VE testified that Plaintiff previously worked as a painter (Dictionary of Occupational Titles (DOT) No. 840.381-010, medium skilled.) AR 42. The ALJ then asked the VE hypothetical questions, contemplating an individual that can lift 20 pounds and stand and walk for six hours out of an eight hour day. AR 42. The VE testified that this individual could not perform Plaintiff's past relevant work. However, the VE testified that a person with such limitations could perform the full range of light and sedentary jobs at the skilled level. AR 43.

In a second hypothetical question, the ALJ asked the VE to consider the same individual in the first hypothetical question except with the additional limitation that this individual could only use his hands for two-thirds of the day. AR 43. The VE indicated that such an individual could perform work as a cashier II (DOT No. 211.462-010), assembler (DOT No. 712.687-010), and cleaner (DOT No. 323.687-014). AR 43. In a third related hypothetical, the VE testified that if the same individual could only use his hands one-third of the day, that individual could perform work as a counter clerk (DOT No. 249.366-010, light unskilled), furniture rental clerk (DOT 295.357-108, light unskilled), and call out operator (DOT 237.367-014, sedentary).

**Summary of the Medical Evidence**

The entire medical record was reviewed by the Court. AR 238-815. The administrative record establishes that Plaintiff suffers from bilateral carpal tunnel syndrome for which he underwent surgical

release in 2004.  AR  238. In 2006, nerve conduction studies revealed definitive improvement on Plaintiff's right wrist and mild improvement of the left wrist following surgery.  AR 238, 244-245, 248, 260, 346. On August 10, 2007, Plaintiff's treating physician, David Bowen, M.D., opined Plaintiff had reached maximum medical improvement and declared him permanent and stationary. AR 347.

Kevin Schmidt, D.O., examined Plaintiff on August 27, 2007 and diagnosed bilateral carpal tunnel syndrome and status post carpal tunnel release of the left hand.  AR 34.  Dr. Schmidt opined Plaintiff could not engage in prolonged repetitive use of his hands, could not engage in twisting (with his hands), and could not lift over 20 pounds.  AR 434.

The record does not contain any records showing that Plaintiff received treatment for his hands or otherwise between September 2007 and July 2008. Treatment of Plaintiff's carpal tunnel syndrome began again in January 2009 with medications and injections.  AR 601-610, 670-678, 722-729, 781-791.

On December 16, 2009, consultative examiner Emanuel Dozier, M.D., performed an internal evaluation of Plaintiff.  AR 635.  Dr. Dozier reported that he observed Plaintiff ambulating down the hall and that he showed no signs of pain, ataxia, or shortness of breath.  AR 636.  Plaintiff was able to sit during the interview without discomfort and was able to get on and off the examination table without assistance.  AR 636.  Dr. Dozier reported there was no evidence of atrophy or effusions and Plaintiff's extremities had no clubbing, cyanosis, or deformity.  AR 637.  Dr. Dozier diagnosed bilateral carpal tunnel syndrome status post decompression; history of generalized arthritis; chronic mechanical low back pain; and rule out hypothyroidism.  AR 638-639.  Dr. Dozier opined that Plaintiff retained the capacity to lift 20 pounds occasionally and 10 pounds frequently; to perform occasional bending, stooping, crouching, pushing, and pulling; and to perform occasional reaching, handling, feeling, and fingering.  AR 639.

On January 26, 2010, J. Mitchell, M.D., state agency physician, opined that Plaintiff retained the physical capacity to perform light work except he was limited to: frequent climbing of ramps and stairs, balancing, kneeling, and crouching; occasional climbing of ladders, ropes, and scaffolds;

4

occasional stooping and crouching; frequent handling; but not forceful twisting or grasping bilaterally. AR 641-642.

On November 14, 2011, Chris S. Yoon, M.D., examined Plaintiff, diagnosed bilateral wrist pain with unclear etiology, status post bilateral carpal tunnel surgeries, but did not recommend specific treatment. AR 813.

Treating physician Kenneth Hsu, M.D., provided a medical source statement in December 2011. AR 814-815. Dr. Hsu opined Plaintiff retained the capacity to lift 10 pounds occasionally and less than 10 pounds frequently. AR 814.

### The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 8-18. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 26, 2007. AR 10. The ALJ identified bilateral carpal tunnel syndrome; obesity, arthritis; degenerative disc disease of the lumbar spine, and degenerative disc disease of the left knee as severe impairments. AR 10. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 12.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that he was limited to using his hands for repetitive work activity for one-third of the day. AR 13. The ALJ subsequently found that Plaintiff was unable to perform his past relevant work. AR 16. However, based on Plaintiff age, education, work experience, and RFC, the ALJ determined that significant jobs exist in the national economy that Plaintiff could perform. AR 17. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 18.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

**1.  The ALJ Properly Rejected Dr. Hsu's Opinion**

Plaintiff first argues that the ALJ failed to give legitimate reasons for rejecting the opinion of his treating physician Kenneth Hsu, M.D. Specifically, Plaintiff alleges that the ALJ rejected Dr. Hsu's opinion because his medical opinion was inconsistent with his treatment records. Further, the

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

1  ALJ found that Dr. Hsu's opinion directly conflicted with Plaintiff's own testimony that he could lift
2  up to 20 pounds. (Doc. 17 at 19). Plaintiff argues the ALJ's reasons for rejecting Dr. Hsu's opinion
3  are without merit.

### A.  Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). *See also*, 20 C.F.R. § 404.1527(c)(1)-(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id*. § 404.1527(c)(2)(i)-(ii). Additional factors relevant to evaluating any medical

opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6).

**B.     The ALJ Provided Specific and Legitimate Reasons to Discount Dr. Hsu's Opinion**

The record indicates that Plaintiff began treating with Rheumatologist, Dr. Kenneth Hsu, on October 15, 2008. Dr. Hsu prescribed Plaintiff medication for his low back pain, carpal tunnel syndrome, hypertension and heart problems. AR 605, 608-610, 613-616. On July 22, 2009, Dr. Hsu's records indicated continued medication of Oxycontin, Tizanicline, Rantadine, Diazepam, Amitriptyline, Metroproler, and Simivastin. AR 602, 605. On September 17, 2009, Plaintiff visited Dr. Hsu again to refill his prescriptions. During that appointment, Dr. Hsu noted that both of Plaintiff's hands were swollen. AR 601.

Dr. Hsu completed a medical source statement in December 2011. Dr. Hsu opined that Plaintiff is capable of performing sedentary work with modifications including standing or walking less than two hours of an eight-hour day; sitting less than six out of an eight-hour day; no climbing, stooping, kneeling, crouching or crawling; occasional balancing; limited reaching, handling and fingering; and limitations as to work around heights, moving machinery and temperature extremes. Dr. Hsu based his medical conclusions on Plaintiff's daily prescription of 40mg of Oxycotin per day. AR 815.

In weighing Dr. Hsu's opinion, the ALJ found as follows:

> Kenneth Hsu, M.D. authored a medical source statement in December 2011…Dr. Hsu's opinion is given little weight because it is not supported by his own treatment records, which consist solely of conservative care. In addition, the claimant admits that he is able to lift up to 20 pounds, which directly conflicts with Dr. Hsu's opinion. AR 16.

Here the ALJ properly gave Dr. Hsu's opinion little weight because it was not supported by his own treatment records, which consist solely of conservative treatment. *See* 20 CFR 404.1527(c)(3); *cf*

8

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of clinical findings is specific and legitimate reason for rejecting treating physician's opinions); *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion.") (*citing Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In weighing the medical evidence, the ALJ explained that absent from Dr. Hsu's opinion and the medical record as a whole were clinical findings or treatment notes to support Dr. Hsu's more extreme opinion regarding Plaintiff's functional limitations, *e.g.,* that Plaintiff could only perform sedentary work, and could only lift 10 pounds occasionally. AR 814.

As noted by the ALJ, the medical record shows routine, conservative treatment for Plaintiff's impairments. Throughout the course of treatment, Dr. Hsu prescribed Plaintiff consistent and steady medications and occasional epidural injections. Dr. Hsu did not recommend surgery and Plaintiff testified at the hearing, that indeed no physician has recommended additional surgery for his impairments. AR 40. Furthermore, the ALJ observed Plaintiff, himself, contradicted Dr. Hsu's opinion by admitting that he was capable of lifting up to 20 pounds. AR 32. At the hearing, the ALJ asked Plaintiff "how much weight can you lift?" Plaintiff responded "on my report they told me not to go over 20 pounds." AR 32. While Plaintiff argues that the ALJ was incorrect to conclude that Plaintiff could lift up to 20 pounds, the ALJ's interpretation of Plaintiff's testimony was reasonable. Plaintiff never testified that he was incapable of lifting up to 20 pounds. Thus, at a minimum, the ALJ's interpretation of Plaintiff's testimony is susceptible to more than one rational interpretation and therefore the ALJ's opinion in that regard must be upheld. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld).

In weighing the medical evidence, the ALJ did not rely on Dr. Hsu' opinion and instead the ALJ gave more weight to the similar and consistent opinions of another treating physician, Dr.

Schmidt, the consultative examiner, and the state agency reviewing physicians. The ALJ found as follows:

> The most probative weight is given to the opinion of Dr. Schmidt, the claimant's treating provider in 2007 who restricted [Plaintiff] from prolonged repetitive use of his hands as well as lifting and twisting his hands greater than 20 pounds. Dr. Schmidt's opinion is well supported by objective medical evidence and his own treatment records as well as the claimant's admitted ability to lift up to 20 pounds. AR 16.

The ALJ's evaluation of the medical evidence was also largely supported by consultative examiner Dr. Dozier December 2009 findings. AR 16, 635. After evaluating Plaintiff on December 16, 2009, Dr. Dozier opined that Plaintiff has a history of generalized arthritis, bilateral carpal tunnel syndrome, and chronic low back pain but he is capable of performing light work. AR 639. Dr. Dozier reported that he observed Plaintiff ambulating down the hall and that Plaintiff showed no signs of pain, ataxia, or shortness of breath. AR 15, 636. Dr. Dozier observed Plaintiff was able to sit during the interview without discomfort. AR 15, 636. During his exam with Dr. Dozier Plaintiff was able to get on and off the examination table without assistance. AR 15, 636. Dr. Dozier further reported that motor strength in the upper and lower extremities was full. AR 15, 638.

In addition, the ALJ gave the state agency physical consultant's opinion some weight. That opinion found that Plaintiff is capable of performing light work with limitations to frequent climbing of ramps and stairs, balancing, kneeling, and crouching; occasional climbing of ladders, ropes and scaffolds, stooping and crouching with frequent handling, but no forceful twisting or grasping bilaterally.

If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Social Security] Administration considers additional factors including "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of understanding a physician has of the [Social Security] Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record." *Id.* (citing 20 C.F.R. § 404.1527(d)(3)-(6)).

Here, the majority of Plaintiff's physicians opined that Plaintiff could perform light work with certain modifications, and no physician, other than Dr. Hsu, limited Plaintiff to sedentary work. Further, there was a conflict between Dr. Hsu's medical opinions and Dr. Hsu's own treatment records and the testimony of Plaintiff.   For those reasons, the ALJ legitimately decided that Dr. Hsu's opinion was an outlier and credited it "little weight" AR. 16. The ALJ properly resolved the conflict between Dr. Hsu's opinion and the opinions of the other medical sources in the record that concluded Plaintiff could complete light work and lift twenty pounds. *See Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (holding that it is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine the credibility of medical sources).

Overall, the ALJ articulated specific and legitimate reasons for rejecting Dr. Hsu's opinion. The ALJ was entitled to resolve the conflict between Dr. Hsu's opinion and those of the other doctors in favor of the conclusion supported by the consistent objective evidence. Accordingly, the Court will not reverse or remand the ALJ's decision for failure to credit Dr. Hsu's medical opinion.

**2.     The ALJ Properly Evaluated Plaintiff's Credibility**

Plaintiff also argues that the ALJ erred in rejecting his excessive pain symptoms. (Doc. 13 at 20).    The Court disagrees.

**A.     Legal Standard**

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the

11

claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

### B. The ALJ Gave Sufficient Reasons to Reject Plaintiff's Subjective Testimony

The ALJ rejected Plaintiff's physical impairment testimony for three clear and convincing reasons. First, the ALJ found that the objective medical evidence does not support the alleged severity of Plaintiff's symptoms. An ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's alleged pain symptoms so long as it is not the only reason for discounting a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). As noted above, Plaintiff complained of excessive knee and back pain but upon examination Dr. Dozier observed Plaintiff ambulating down the hall with no signs of pain. Dr. Dozier also observed Plaintiff was able to sit during the interview without discomfort and get on and off the examination table without assistance. AR 15. It was proper for the ALJ to consider Plaintiff's medical records in assessing his credibility. See 20 C.F.R. §§ 404.1529 (c)(1) & 2 and 416.929(c)(1) & (2) (2013) (requiring consideration of medical history, medical signs and laboratory findings, and objective medical evidence in evaluating the extent and impact of alleged pain); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (upholding credibility assessment where results of medical tests of functioning did not support subjective allegation); *Batson v. Comm'r of the Social Security Admin.,* 359 F.3d 1190, 1196 (9th Cir. 2004) (holding ALJ properly relied on objective medical evidence and medical opinions in determining credibility); *Nyman v. Heckler*, 779 F.2d 528, 530 (9th Cir. 1986) (discussing language of Act requiring consideration of medical evidence in assessing subjective complaints).

Second, the ALJ found that Plaintiff's symptoms had improved post-surgery and were controlled with medication. AR 14. The record contains evidence that after Plaintiff's carpal tunnel surgery in 2004, nerve conduction studies in 2006 revealed definitive improvement on the right wrist and mild improvement on the left wrist following surgery. AR 238, 244-245, 248, 260, 346. X-rays taken of Plaintiff's hands on September 16, 2011 showed that Plaintiff's soft tissue was unremarkable and the impression was that Plaintiff's hands were normal. AR 797. The ALJ also pointed out that on November 14, 2011, Dr. Yoon, examined Plaintiff, diagnosed bilateral wrist pain with unclear etiology, status post bilateral carpal tunnel surgeries, but did not recommend specific treatment. AR

12

813. The ALJ also noted that after receiving injections for his hands and wrists, Plaintiff described his pain as mild and acknowledged improvement with his treatment. AR 14. Further, the ALJ also observed that between 2007 and 2009 the record lacked evidence of any significant treatment for Plaintiff's bilateral carpal tunnel syndrome. AR 14. The ALJ's observation of Plaintiff's improvement after surgery and throughout his treatment is a clear and convincing reason for rejecting Plaintiff's excessive pain testimony. Indeed, Plaintiff testified at the hearing that his pain medications "take care of [his] back real well." AR 33. An impairment that is amenable to control cannot be a basis for disability. *Warre v. Commissioner of Social Security*, 439 F.3d 1001, 1006 (9th Cir. 2006). Thus, the ALJ properly considered the fact that Plaintiff's treatments helped his condition when evaluating Plaintiff's credibility. *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998).

Finally, the ALJ cited Plaintiff's relatively conservative treatment history to support his adverse credibility finding. Since his last surgery on January 26, 2007, the alleged onset date, Plaintiff has managed his symptoms through prescription medications and infrequent epidural and cortisone injections. AR 16. The record lacks evidence that additional surgery or other aggressive treatment for Plaintiff was recommended. Further, at the hearing, when asked if additional surgery was recommended for Plaintiff's impairments, Plaintiff admitted that he has not "talked to anybody" about additional surgery. AR 40. Evidence of conservative treatment may diminish a Plaintiff's credibility and is sufficient reason to discount a claimant's testimony regarding the severity of impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

The ALJ's credibility findings with respect to Plaintiff's excessive pain testimony were thoroughly explained and supported. Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by substantial evidence in the record, this Court does not second-guess that decision. *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989). By considering Plaintiff's conservative treatment history, symptom improvement, and the objective medical evidence, the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints. Thus, the ALJ satisfied his burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas*

*v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Although Plaintiff may disagree with the specific findings, the findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Thomas*, 278 F.3d at 959. Therefore, Plaintiff's challenge on this ground fails.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security, and against Plaintiff, Donald Traynor.

IT IS SO ORDERED.

Dated:   **September 24, 2014**            /s/ *Barbara A. McAuliffe*
                                           UNITED STATES MAGISTRATE JUDGE